IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK WILLIAM ROBERTS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | Case No. 15-CV-406-JED-FHM |
| JIMMY MARTIN, Warden,[1] ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Before the Court is Mark William Roberts' 28 U.S.C. § 2254 habeas corpus petition (Doc. 1). For the reasons below, the Court will deny the petition.

**I. Background**

This case stems from a methamphetamine production fire that erupted in Roberts' apartment. (Doc. 18-1 at 10).[2] The fire killed two neighbors and left one in a vegetative state. (*Id.* at 11). Roberts suffered severe burns and spent weeks in a coma, but he eventually recovered. (*Id.*). The state charged Roberts with felony murder (Counts 1 and 2), first degree arson (Count 3), and manufacturing or attempted manufacturing of a controlled dangerous substance (Count 4) in Tulsa County District Court, Case No. CF-2009-2351. (Doc. 10-3 at 1); (*see also* Doc 18-3 at 1).

Roberts' jury trial commenced on January 9, 2012. (Doc. 20-4 at 1). The state called various witnesses, including: (a) Officers Claramunt and Vandolah, who investigated the scene;

---

[1] Petitioner is incarcerated at Northfork Correctional Center (NCC) in Sayre, Oklahoma. (Doc. 28 at 1). Jimmy Martin, the warden of NCC, is therefore substituted in place of Tracy McCollum as party respondent. *See* Habeas Corpus Rule 2(a). The Clerk of Court shall note the substitution on the record.

[2] The Court finds Roberts' appellate brief (Doc. 18-1) accurately sets forth the noncontroversial background facts in this case and will cite the brief accordingly.

(b) Kathy Smith, who allegedly helped Roberts obtain pseudoephedrine and drove him to the hospital after the fire; and (c) a relative of Nikki Cain's, the woman left in a vegetative state. (Doc. 18-1 at 47-49). Roberts maintained that the physical evidence was circumstantial, as his apartment did not contain every necessary component for methamphetamine production. (*Id.* at 13-15). After nine days of trial, the jury convicted Roberts of the methamphetamine charge (Count 4) but acquitted Roberts of felony murder and arson (Counts 1-3). (Doc. 20-20 at 110). The jury found Roberts had previously been convicted of two or more felonies and recommended a sentence of life imprisonment. (Doc. 10-3 at 1). The state court sentenced him accordingly. (*Id.*).

Roberts perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Doc. 10-2). By a summary opinion entered May 20, 2013, the OCCA affirmed the conviction and sentence. (Doc. 10-3 at 1, 6). Roberts then filed an application for post-conviction relief in the trial court, which was denied. (Doc. 10-4). Roberts appealed, complaining only that the state court erred when it denied his post-conviction application without a reply, and the OCCA affirmed the state court ruling. *See Mark William Roberts v. State*, Case No. PC-2014-1068 (Okla. Crim. App. Mar. 19, 2015) (unpublished).

Roberts filed the instant § 2254 petition on July 20, 2015.[3] (Doc. 1). The petition identifies ten grounds of error:

Ground 1: The conviction violates the Due Process Clause under the specific facts of this case.

Ground 2: The state court erred by admitting certain evidence.

---

[3] Roberts filed his first § 2254 petition on April 30, 2015. (Doc. 1 in Case No. 15-CV-229-TCK-TLW). However, the Court dismissed the petition without prejudice on July 6, 2015 after finding Roberts failed to exhaust state remedies. (Doc. 10 in Case No. 15-CV-229-TCK-TLW).

Ground 3: The state violated the Due Process Clause by destroying evidence.

Ground 4: Improper opinion testimony violated the Due Process and Confrontation Clauses.

Ground 5: Errors in jury instructions deprived Roberts of a fair trial.

Ground 6: The conviction is predicated upon insufficient evidence.

Ground 7: Prosecutorial misconduct tainted the trial.

Ground 8: Roberts' incriminating statements should have been suppressed.

Ground 9: Roberts' sentence was excessive.

Ground 10: Cumulative errors require the conviction to be reversed.

(Doc. 1 at 5-22).

On August 26, 2015, Respondent moved to dismiss the petition because it contained both exhausted and unexhausted claims. (Doc. 10). By an Opinion and Order entered February 4, 2016, the Court found Ground 1 was unexhausted and that the OCCA would impose a procedural bar if Roberts returned to state court. (*Id.* at 9). The Court therefore directed Roberts to show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the procedural default of Ground 1. (*Id.* at 11). The Court also directed Respondent to file a substantive answer addressing Grounds 2 through 10. (*Id.* at 11).

Respondent filed the answer (Doc. 18), along with relevant portions of the state court record (Docs. 20, 21), on April 4, 2016. Respondent concedes, and the Court finds, that Thompson's petition is timely under 28 U.S.C. § 2244(d)(1). (Doc. 18 at 1). However, Respondent contends Roberts failed to overcome the procedural bar applicable to Ground 1 and that Grounds 2 through 10 fail on the merits. (Doc 18); (*see also* Doc. 19).

Roberts filed various responses and replies following the Opinion and Order. With

respect to the procedural bar, he continues to argue Ground 1 was exhausted in the direct appeal. (Docs. 15, 23, and 35). In his most recent filing, Roberts waived all grounds for relief except Ground 1 (due process violations) and Ground 5 (instructional errors). (Doc. 35 at 1-2 ("Petitioner has also winnowed out of the reply all grounds except Ground I and Ground V as his strongest claims and ask this Court to dismiss all other claims.")).[4] Accordingly, the Court will only address Grounds 1 and 5.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[5] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

---

[4] The body of the reply brief reiterates Roberts' desire to limit this proceeding to Grounds 1 and 5. The brief contains two "discussion" sections, one for each ground. (Doc. 35 at 4, 12). Pages 4 through 12 discuss how Roberts exhausted Ground 1, and pages 12 through 21 discuss alleged errors in connection with jury instructions. (*Id.*).

[5] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### A. Due Process Violations (Ground 1)

In Ground 1, Thompson argues his methamphetamine conviction violates the prohibition against double jeopardy and results in "multiple punishment[s] for a single act." (Doc. 1 at 5).

The Court already declined to reach the merits of Ground 1 in its Opinion and Order entered February 2, 2016. (Doc. 14). Thompson was given an opportunity to address the procedural default of Ground 1. However, he explicitly declined to do so, stating it would be an "exercise in futility." (Doc. 23 at 3). Thompson instead insists Ground 1 was exhausted through the direct appeal. (Docs. 15, 23, and 35).

As the Court previously explained, there are distinct differences between Roberts' arguments in Ground 1 and his OCCA brief. Roberts' instant argument is based on double jeopardy. (Doc. 1 at 5). He contends that because the arson and felony murder charges included methamphetamine production as an element of the crimes, he should not have faced a separate production charge. (*Id.*). Said differently, he was charged multiple times for the same wrongdoing.

On appeal, the alleged due process violation focused on notice and an opportunity to defend. Roberts argued the state unfairly broadening the crime at trial beyond the wrongdoing identified in the Information. (Doc. 18-1 at 21). The OCCA brief notes that the state only charged Roberts with manufacturing drugs *on or about the day of the fire,* which led to the death of two neighbors. (*Id.*). Therefore, an acquittal on the arson and felony murder charges would have necessarily required an acquittal on the methamphetamine charge. (*Id.* at 22). At trial, however, the jury found insufficient evidence of manufacture on the day of the fire but convicted Roberts of manufacturing methamphetamine on a different day. (Doc. 20-20 at 110). This result allegedly deprived Roberts of the opportunity to defend against the additional manufacturing charges. (Doc. 18-1 at 24 (Roberts was denied "due process because he was never informed of any other allegations of drug manufacture besides that which may have occurred on" the date of the fire)).

Based on these differences, the Court declines to revisit its ruling that Ground 1 is unexhausted and defaulted. Because Roberts failed to show cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar, federal habeas relief is unavailable with respect to Ground 1. *See Coleman v. Thompson,* 501 U.S. 722 (1991) ("We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims … federal habeas review of the claims is barred unless the prisoner can demonstrate cause … and actual prejudice … or … that failure to consider the claims will result in a fundamental miscarriage of justice.").

**B. Jury Instructions (Ground 5)**

Roberts next argues that the state court violated his due process rights by failing to properly instruct the jury. (Doc. 1 at 12). He contends he was entitled to cautionary instructions regarding: (1) evidence of other crimes and bad acts; (2) use of hearsay to support opinion testimony; (3) victim impact evidence; and (4) uncorroborated accomplice testimony. (*Id.*); (*see also* Doc. 18-1 at 47-49). The OCCA considered and rejected each argument, finding Roberts "failed to show any error, much less plain error, in the jury instructions." (Doc. 18-3 at 4).

Federal habeas courts have a limited role in evaluating jury instructions. Relief is only available if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990) (quotations omitted). Petitioner's burden under this test is "greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question is not whether the instruction[s] [were] undesirable, erroneous, or even universally condemned, but whether the instruction[s] so infected the trial that the resulting conviction violates due process." *Maes v. Thomas,* 46 F.3d 979, 984 (10th Cir. 1995) (quotations omitted). Where, as here, the petitioner relies on the omission of instructions rather than the

7

provision of an erroneous instruction, the burden is especially heightened. *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999). As the Tenth Circuit explained: "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* (quoting *Maes,* 46 F.3d at 984) (remaining citations omitted).

    1.    <u>Evidence of Other Crimes/Bad Acts</u>

Roberts complains the trial court failed to *sua sponte* instruct the jury on the use of evidence regarding his other crimes or bad acts. The petition does not identify the specific evidence in question. Based on the reply brief, the Court discerns the evidence includes testimony by Kathy Smith, who described how she obtained pseudoephedrine for Roberts, and Roberts' statements to medical staff and officers at the hospital. (Doc. 35 at 19-20). The Court is skeptical that such evidence refers to other crimes or bad acts; it appears to be more in the nature of *res gestae* evidence, which is inextricably intertwined with the charged crime. *See United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) ("Evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof of the offense charged in the indictment.").

In any event, the Court finds the jury instructions adequately limited the challenged testimony. Instruction 21 cautioned jurors that "evidence relating to an alleged statement by a defendant outside of court and after a crime has been committed may be considered …, but only with great caution and only if … it was made … voluntarily." (Doc. 20-23 at 148). Instruction 19 noted Smith's conduct and crimes could be considered in evaluating the weight and credibility of her testimony. (*Id.* at 146). The state court also conveyed the state's burden of proof with respect to the charged crimes and cautioned the jury to weigh the credibility of each witness considering the relation of the witness to the parties as well as the witness' bias. (*Id.* at 142; 151-

8

165). Based on these instructions, and the record as a whole, the Court finds the omitted "other crimes" instruction did not render the trial fundamentally unfair.

2. Use of Hearsay to Support Opinion Testimony

Roberts also contends the state court should have *sua sponte* cautioned the jury about the use of hearsay information by Officers Claramunt and Vandolah. The officers testified as opinion witnesses, relaying their observations about the scene and certain out of court statements evidencing Roberts' guilt. (Doc. 18-1 at 47-48).

Federal law generally contemplates a limiting instruction when an expert's opinion incorporates hearsay. *See Williams v. Illinois*, 567 U.S. 50, 81 (2012) ("[T]rial judges may and, under most circumstances, must, instruct the jury that out-of-court statements cannot be accepted for their truth…."). As Respondent points out, however, the state court verbally admonished the jury and provided similar information after Officer Claramunt testified:

> I'm going to ask that you disregard the statements relating to some sort of recognition or feeling of the guilt of the defendant and the activity of the defendant other than what this officer saw on the scene.

(Doc. 20-11 at 130). Instruction 15 further cautioned the jury to consider each witness' "opportunity of knowing the matters about which the witness testified." (Doc. 20-23 at 142). In light of these instructions, and the entire record, the Court finds Roberts received a fair trial without a limiting instruction on opinion testimony.

3. Use of Victim Impact Testimony

The third omitted instruction involves victim impact evidence. Roberts appears to argue, as he did on appeal, that a limiting instruction was required after the jury was exposed to an emotional 911 call, a photo of victim Nikki Cain, and testimony about her condition and personality. (Doc. 18-1 at 48).

"A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Such evidence "serves entirely legitimate purposes" in the majority of cases. *Id.* at 825. In rare cases, victim impact evidence could be "so unduly prejudicial that it renders the trial fundamentally unfair" in violation of the due process clause. *Id.* The Tenth Circuit has applied *Payne* to situations where, as here, victim impact evidence was introduced at trial and the Oklahoma state court failed to issue a limiting instruction. *See Hamilton v. Mullin,* 436 F.3d 1181, 1193 (10th Cir. 2006). The Circuit found the omitted instruction did not taint the outcome at trial - and habeas relief was therefore unavailable - because counsel did not ask for an instruction; the jury otherwise received detailed instructions guiding their deliberations; and the evidence would not have influenced a finding as to certain aggravating factors. *Id.*

*Hamilton* dictates the same result here. There is no indication in the record that Roberts requested a victim impact instruction. The state court instructed the jury not to let sympathy, sentiment, or prejudice enter into its deliberations. (Doc. 20-23 at 142). Further, the challenged evidence (a 911 tape, a picture of Nikki Cain wearing a coat, and a statement that she was outgoing, athletic, vivacious, and pleasant) was not unduly inflammatory or prejudicial. (Doc. 18-4 at 21; 31-34). The Court therefore concludes the absence of a victim impact instruction did render the trial fundamentally unfair.

4. <u>Accomplice Testimony</u>

Roberts finally argues the state court should have issued an accomplice instruction to limit the testimony by Kathy Smith. It is well settled that defendants do not have a federal constitutional right to an accomplice instruction. *See Foster v. Ward*, 182 F.3d 1177, 1193–94

(10th Cir. 1999) (noting "there is no constitutional requirement that [the Oklahoma habeas petitioner's] testimony be corroborated"). Due process concerns are met by "vigorous cross-examination [of the accomplice] and instructions informing juries of their responsibilities to make credibility determinations, bearing in mind the potential for bias, interest or prejudice." *Watson v. Howard*, 123 Fed. App'x 910, 917 (10th Cir. 2005) (citing *Foster,* 182 F.3d at 1193). Jurors are free to accept accomplice testimony "so long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt." *Foster*, 182 F.3d at 1193.

As discussed above, the state court issued a general instruction regarding credibility determinations and a specific instruction cautioning jurors to consider Kathy Smith's conduct in determining her credibility. (Doc. 20-23 at 142, 146). Roberts' counsel cross-examined Kathy Smith about lies she told investigators; inconsistencies in her story; prior convictions; and any favorable treatment she received as a result of her testimony. (Doc. 20-7 at 80-89). Further, Kathy Smith's testimony is capable of establishing she supplied Roberts with a necessary component to produce methamphetamine. (*Id.* at 45). Roberts has therefore not demonstrated a due process violation in connection with the omitted instruction. Because Ground 1 is barred and habeas relief is unavailable with respect to Ground 5, the Court will deny the petition.

### III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,

529 U.S. 473, 484 (2000). For the reasons discussed above, Roberts has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Jimmy Martin, Warden, in place of Tracy McCollum, as party respondent.

2. The petition for a writ of habeas corpus (Doc. 1) is denied.

3. A certificate of appealability is denied.

4. A separate judgment will be entered herewith.

ORDERED this 18th day of September 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE